That is Duda v. Elder 20-1416, counsel for appellant, you may proceed. Good morning, your honor. May it please the court, Brian Schmidt, senior assistant county attorney with the El Paso County Attorney's Office for the defendant appellant, Bill Elder, the duly elected sheriff of El Paso County, Colorado. Your honors, Sheriff Elder is entitled to immunity in this matter for the retaliation claims brought against him by Mr. Duda because the law under which he terminated Mr. Duda's employment as the deputy sheriff was not so clearly established that every reasonable sheriff would have known that terminating a sheriff's deputy for multiple policy violations, including a violation of a neutral and constitutional policy prohibiting political activity while on duty, complaints brought forward not by Sheriff Elder or his administration, but by Mr. Duda's subordinates, co-workers. Mr. Schmidt, didn't the district court say that there was a disputed issue of fact as to whether this really was applied neutrally to policy? Yes, your honor. Are you contesting that? I'm sorry? Are you contesting that? We are contesting that. Well, we're contesting that. Counsel, how can you do that on interlocutory appeal? This was a finding by the district court that there's a genuine issue of fact on interlocutory appeal. We can't get into issues of fact. We only do deal with issues of law. Right. If you're contesting a fact, how do we have jurisdiction over that issue? What we're contesting, your honor, is the district court's application of the law to the facts. Well, no. You just said in your opening statement that this was a neutral policy, and the court said it wasn't because there were people who were violating the policy, and it wasn't applied to them. It was applied to Mr. Duda, or at least there's a question of fact about that. So how do we have jurisdiction to consider your argument? Your honor, in the Heffernan court, the court established two specific procedures for determining whether the violation of the First Amendment claims had been established. What they said is that the court is required first to look to the policy to determine its For example, is it neutral on its face? Does it apply across the board to all employees, and is it neutral without reference to any political affiliation or association? That is the policy that we have at issue. I'm with you so far, but go ahead. The court, the district court, then took the additional step of saying, well, in order to determine the neutrality of this policy, we then have to look to see how is the policy applied within the El Paso County Sheriff's Office. But the standard from the case law that's cited in Greece, and particularly from Heffernan, the Third Circuit Court, says you have to look at the policy to determine the neutrality. And then if you answer, is that policy on its face neutral, then you look at the application. And the application that you look at is not to the application of that policy to others, but how was that policy applied to the plaintiff? How can you possibly determine neutrality unless you know whether it was even-handedly applied? And I'm speaking to the Heffernan, now the Supreme Court case, in which the court specifically said in its remand, essentially, that you had to look at whether, in fact, this purportedly neutral policy was followed. And to get to a more fundamental point that Judge Matheson, at least I understand him to be making, on appeal here, on interlocutory appeal, whether you like it or not, the district court found that a reasonable jury could find that this policy was not even-handedly applied and was not neutral. So when you make your legal arguments, it seems to me you've got to start from there. Because if you don't start from there, there's going to be a serious problem as to whether there's jurisdiction to hear this case, because you can't dispute that finding. Isn't that the law? It is the law, Your Honor. And the issue here, though, is that the court, we believe, skirted the issue of neutrality by looking at and doing kind of a deep dive into whether that policy that the El Paso County Sheriff's Office had in place was applied to others. And it based it on facts that were not fully in evidence. So the question here is not whether those facts disputed, because whether it was applied across the board equally or not, has no bearing on the outcome of what the Heffernan court says that's required. Why wouldn't it? I mean, if it is applied to everybody except for people who say what the sheriff wants them to say, does that not cut against the neutral application of the policy? As long as you say what I want you to say, it's not going to apply. It may cut into the neutral application of the policy. It does not cut into whether the policy itself is neutral and constitutional. The court in Heffernan have two questions. Is it, on its face, neutral and constitutional? And the second is, is it followed? I'm sorry, the second is what? The second is, is it followed? Is it, in fact, constitutionally applied? Yes, Your Honor. As to the plaintiff? Well, no, I don't see that. What language are you getting at? And that is not generally the way these things are done. How can you exist? Okay, what's your strongest case where it is not applied to anybody but the plaintiff in determining neutrality? If you look at the case laws that were cited in the brief, for example, the case that Mr. Judith's counsel cited, the Shad case, that case, in that case, the court said that the First Amendments are implicated by the government, must be able to demonstrate a uniform policy, which is the Heffernan standard, right, and you've got to show that the policy itself is neutral and is applied in a content-neutral fashion. Justice Stevens, in his concurring opinion, says, you've got to go, you look at the policy, and he said, because neither the text of the zoning ordinance nor the evidence in the record indicates that Mount Ephraim applied the narrowly drawn, content-neutral standards to the plaintiff's business. Well, the operative word, well, number one, that's a different context, okay, that we're talking about in that case. Number two, the operative word is uniformly applied, uniformly applies across the board, even-handed. Uniform was the word that you used. That's what the case said, that's what appears to be missing here, but let me move on to it for a second. Okay. Is it not the case that Mr. Judith is raising political association and speech claims? He claims that the U.S. rights, First Amendment rights, were violated in both ways. That's correct. Okay. In your brief, I didn't see a distinct political association argument. You seem to merge those as if they were the same. Is it not, in fact, the case that there is two discrete legal frameworks that apply, respectively, to political association and speech? Right. The difference here, Your Honor, is that Mr. Judah was not disciplined for any political association that he had. Well, that remains to be determined. He claims that he was disciplined for his political association. That is, his desire to associate with the candidate running for sheriff. Correct. And he was free to do that. He campaigned for that candidate off-duty. He claims he was terminated for that reason. So, whether he claims, his claim is he was terminated in part for that reason. And so my argument is, well, not argument, my question is, on appeal, are you challenging the qualified immunity determination as it relates to the political association claim? And, if you are, where did you discreetly bring that in your appellate brief? I don't believe we did, Your Honor, because the focus was on the ruling from the district court had to do with the political speech and the speech that occurred while he was on duty. You're saying the district court, I thought the district court denied you qualified immunity across the board as to his First Amendment claims, plural, which would include his political association claim. Right. What the district court decided was that in reference to an article that appeared in an independent newspaper in Colorado Springs, that there was no, we put forth no argument as to that. And the district court was right, because there was no discipline for that event. What we were focused on is whether it was reasonable for Sheriff Elder to terminate this deputy sheriff for violation of the policy against political speech while he's on duty. The notice of intent to terminate very clearly delineates four separate items involving multiple policy violations, none of which are addressing his affiliation or his association with the sheriff's opponent. Well, what your client says he fired him for doesn't mean that's what your client fired him for. I mean, that's what lawsuits are about. He's claiming, Mr. Duda claims that's not the case. And so that's what we've got to sort out, right? The county's argument, Sheriff Elder's argument, is that the case law indicates, clearly indicates, Rock v. Levinsky, that deference to the decision-maker's decision is required when we have a reasonable belief that a policy was violated. Okay, let's focus on, let's focus on that for a second. Number one, let's move away from the policy for a second, because what we're talking about, since your brief focus is on speech, then we're talking about Garcetti peepering, right? Correct. Okay, focusing on the third component of Garcetti peepering, which is the balancing that takes place. Well, in that balancing, we're looking in part at the disruption that would presumably be caused by the speech of Mr. Duda. Well, why is it sufficient that you have what I think amounts to a total of four allegations in the Mr. Flynn's investigation, isolated incidents of people being troubled by Mr. Duda's speech? You've got a 90-person department, four incidents, okay? Why would that be sufficient to establish actual disruption, and how could you, and if not, how could you predict from that that there would be future disruption? The intention to terminate very clearly addressed Sheriff Elder's belief, his reasonable belief, based on a substantiated finding from an independent investigation. We want our government officials to hire outside investigators when there's any chance that bias or some other factor might come in and play in the decision-making. That's exactly what he did. That may well be right, and that may be the prudent course to follow, but the outside investigator doesn't give you cover to fire anybody for any reason you want, right? I mean, the question, and phrased a different way, if Mr. Flynn had submitted the report and had a flimsy reason, let's just take that, a flimsy reason for firing Mr. Duda, the fact that it came as a result of an investigation would not, right, allow Sheriff Elder to fire him. Do you accept that? I would accept that, yes. Okay, then why are the reasons that are given sufficient in and of themselves apart from any investigation? You've got four incidents, police department, 97 people, why is that even sufficient given the nature of the speech involved? There were four areas of concern. One of the areas, and Sheriff Elder in his deposition testified that that was the most critical area, was this sergeant, this patrol supervisor's failure to timely respond to the opposite direction from where that critical incident is occurring. And so the issue is not just four single small events, but the totality of the circumstances. That's what, according to the intent to terminate, Sheriff Elder based his decision on to terminate. We believe it was reasonable because he had substantiated findings from an independent third party which contained specific factual allegations and the finding of the independent investigator. And so we would ask that the court remand that to the district court for order finding that, granting a summary judgment and providing the Sheriff with qualified immunity. Counsel, if you'll bear with us, we have at least one more question. Okay. Before we leave Garcetti-Hickory and the third factor, and this is going to sound familiar because I started out with a similar question at the beginning, but didn't the district court find that there were disputed issues of fact relating to the actual or potential disruption on the third Garcetti-Hickory factor? And just to finish the question and then you can go ahead. But aren't we back to the problem of dealing with challenges to the district court's factual determinations when on interlocutory appeal that really shouldn't be on the table? Right. I agree with you, Your Honor, except for here that third prong is generally and most often a matter for the court to decide as a matter of law. The court is to determine and apply the various, the balancing test that's set out in Rankin and Waters and all that podge of cases. It does not matter in this case whether a jury would find an actual disruption or a potential disruption because both are actually present in this case. Both of them result in the same outcome and that is that as a matter of law, the balancing test weighs in the favor of the sheriff when there's either an actual disruption or a potential disruption and there's specific evidence substantiating that. My question goes exactly to the St. Vickery test and to point number three because if it is a question of law, I was searching the record to find where the judge made such a determination. Can you point me to that in the record? He did not make a determination as to that as a matter of law. What he found instead was a reasonable jury. Is it a question of law or a question of fact, counsel? What's that, Your Honor? Is it a question of law? Are those five points, are those questions of law or are they questions of fact? The first three Garcetti-Vickery factors are questions of law for the court to decide. Factor four and factor five are both jury questions. But we're talking about number three. We're talking about number three. All I'm asking is did the court make a determination on point three? The court made the determination that because material, in its view, material facts were in dispute as to whether there was actual disruption or potential disruption, that it needed to go to the jury and no summary judgment, which we believe was the court's improperly passing on its obligation under the precedent in these cases to make that determination. The court failed to do it. We believe that was error. Well, would it be an error or would it be just a remand for the court to make that determination? Well, we believe it was error because, as I previously said... But what would we do with the error? Would we just remand for the court to make that determination? If I can't find that, then that's my fault. Yes, remand with direction to the court to make the determination as to whether, as a matter of law, the third prong of the Garcetti-Vickery test was violated. Thank you, counsel. Thank you, counsel. All right, thank you, Your Honors. And thank you for indulging me with the extra time. Thank you. Thank you, Your Honor. And may it please the court, my name is Brad Sherman. I represent the plaintiff, appellee Keith Dudaw. Mr. Sherman, if you end up needing a little more time, we will indulge you accordingly. Thank you, Your Honor. I appreciate that. Mr. Dudaw puts forward three main arguments here today. First, this court's precedent in Jansen and Wolfe placed Sheriff Veller on clear notice that he would violate the First Amendment if he terminated Keith through his employment for his political affiliation with Mike Angley or for his private speech on a matter of public concern. Second, the facts developed and documented by the district court at summary judgment show a violation of those clearly established rights when they are applied in the manner most favorable to Keith Dudaw. And finally, the district court did not commit legal error in its analysis. And as a result, this court must limit its review of Sheriff Veller's appeal to the clear legal question of whether the factual record developed by the district court shows a violation of clearly established law. We believe the district court's summary judgment order shows that it does, and on those grounds we are going to respectfully request that this court affirm the district court's summary judgment order and deny Sheriff Veller qualified immunity. Following up on Judge Baldi's last line of questioning, just to get clear what your view is on that, do you think that the court, however, made some error in its analysis of Prom 3 by virtue of how it went about its summary judgment analysis? For example, the court spent a lot of time talking about whether there were genuine disputes of material fact. For purposes of qualified immunity analysis, is that really the relevant question? I believe it is, Your Honor. How so? Isn't the question under qualified immunity whether, on the record construed in the light most favorable to the plaintiff, there is a constitutional violation that's clearly established? That's the question, isn't it? Yes, you're correct. That is the question, Your Honor. Okay, so why do we care whether there are genuine disputes of material fact? Why is that even relevant? It comes from the procedure of how this issue was raised at summary judgment. The court is also ruling on the question of whether there are genuine issues of material fact for a jury to decide. But they're two different frameworks, are they not? They are different frameworks. Okay, well then focusing, when the court turned its attention to Prom 3 under the qualified immunity analysis, wasn't it obliged to speak to the legal question of how that balancing played out and what its conclusion was as to that balancing? No, I don't believe it was, Your Honor. Okay, maybe I didn't state my question correctly. Okay, I'm sorry. Garcetti Pickering threw a third prom, balancing of employer interest against the speech of the employee. The court was obliged, was it not, to speak to how it felt that balancing played out? In other words, whether it felt that on balance, the employee's right to speak should prevail. That's correct, Your Honor. That is the decision that the district court has to make on that prom. And did it do that? I believe it did when it found that there's a dispute of material fact. And that does not mean an application of its responsibility to decide that. At trial, the jury can decide that on a special interrogatory. And then the judge can take that interrogatory and make his decision as a matter of law on the first three proms of the Garcetti Pickering balancing test. Okay. Now, to that point, we believe the law is clearly established. Now, for Keith Duda's right to political affiliation with Mike Angley and to campaign on his behalf, the law is clearly established by this court's president in Janssen. Counsel, I was just curious. I didn't see Janssen in your brief. Is that a problem for you at this point? No, I don't believe it is because the argument was raised below in both summary judgment briefings as well as the district court's summary judgment order. Our brief did not focus on Janssen because it responded to the opening brief, which did not focus on Janssen. You're focusing on it now, but there seems to be a little bit of a disconnect. Agreed, Your Honor. And as I re-read it, I had the same conclusion and I wish I had focused on it more. That's all I can say about that. Go ahead. Let me ask this. You have raised a political affiliation plan. And it is the view that qualified immunity was denied not only on your speech claim, but on the political affiliation claim, right? That's correct, Your Honor. It was denied on both. Okay. And so you go forward on those. At least I heard your opposing counsel say they didn't brief really the political affiliation claim, right? And that is correct as well, Your Honor. The brief did not focus on the political affiliation claim. My understanding of it, though, was that it was challenging both First Amendment claims. Okay. Please proceed. Can I just say it was challenging both, and you referenced seeing the appellant's brief? Yes. All right. Thank you. So under this court's precedent in Janssen, the contours of the law are clear, and it's applied in a case with substantially similar facts. And that is what is required to put Sheriff Elder on notice. The contours of the right are simple. If political loyalty is not required for the position, then Keith Duda cannot be fired for his political affiliation. And in this case, Sheriff Elder knew, and Sheriff Elder admits, that political loyalty was not required for Keith Duda's position. At that point, he's on clear notice that if he fires him for his political affiliation, he has done so in violation of the First Amendment. Why can Janssen be clearly established law for purposes of this case, when in Janssen the speech was off-duty, and here at least some of the speech was on-duty? Sure. And I'm referring to Janssen more in the context of the political association or political affiliation claim. Regarding the on-duty speech, that's very much denied and in dispute in this case. Keith Duda denies that he engaged in on-duty political activity as alleged in Sheriff Elder's termination letter. What's your take on this whole question of the policy and the neutrality of the policy? The argument being, okay, and I actually have two questions. One, how do you respond to the argument that the policy itself was neutral, and that when determining neutrality, you only focus on how it's applied to the plaintiff? Okay, let's just start with that question. Sure. I do not agree that the policy was neutral. It is written in a neutral manner. It's neutral on paper. But that's not enough for the First Amendment. What's required is we look at how it's actually applied to the violators who violate this policy at work. And in this case, there is substantial evidence in the record of individuals who campaigned or otherwise engaged in political activity on duty on behalf of Sheriff Elder with his knowledge, and they were not investigated. Now, that is not neutral under the analysis required in Heffernan, which says you look to, is it actually followed? Is it applied in a way that passes constitutional muster? In this case, meaning neutrality. And here, the answer is, there are substantial factual disputes that it was not. Okay, then let's follow that through for a second. Does the question of the lack of, assumed now, for my purposes, assumed lack of neutrality of the policy, does that play not only in the political affiliation context, but also does it have some bearing on the weight of the government interest in Prong 3 of Garcetti-Pickering? I do believe it carries weight on the third prong of Garcetti-Pickering, but I don't believe it's determinative, especially given the factual record in this case. I guess I'm asking, do you think it helps you if the policy, in fact, is not neutral when it comes to Prong 3 of Garcetti-Pickering? Absolutely, Your Honor. If the policy is not neutral, as we're assuming for this question, then what interest does the government actually have in prohibiting this speech, if it's allowing it for some and not allowing it for others based upon not whether they have violated the neutral language of the policy, but rather based on what political viewpoint they're expressing at work? That seems to be how this policy actually operates in practice. If you're campaigning on duty on behalf of Sheriff Elder, a blind eye gets turned to that. If you're campaigning on duty on behalf of Mike Angley, as Sheriff Elder alleges Keith Duda did in this case, then you're investigated and ultimately fired. Yes, I think that is very beneficial to Mr. Duda's case, particularly where the termination letter itself cites on-duty political activity by Keith Duda. If a jury believes that, but also believes that this policy was not applied in a neutral manner, then I believe that letter largely satisfies the elements of the Garcetti Pickering Balancing Test. Let me drill down on one question and make sure I understand your view on this. The argument that I think was, if memory serves me, I know it was in one of the briefs of opposing counsel, the argument that he makes is that, look, you have to look at whether the judgment of the Sheriff was reasonable. Within that context, let's assume that Mr. Duda's view is right. I did not campaign on duty. I did not engage in political speech on duty. Nevertheless, if Mr. Flynn presents an investigative report that says it's more likely than not that he did campaign on duty, the question I would ask is, in the disruption balancing, what do we do with whether the Sheriff would have been reasonable in taking Mr. Flynn's view of the situation and saying, okay, I think this was enough of disruption to fire him? And so I guess my point to underscore is this. I can accept that Mr. Duda's right. Let's just assume he's right. He didn't do it. But if we're looking at whether the employer would have been reasonable in acting on Mr. Flynn's report in finding disruption, do you agree with that? To some extent, Your Honor. I believe that there is some deference that the Sheriff is entitled to under the Supreme Court's holding in Waters. And that is deference to his version of what the speech is when both parties dispute the content of the speech. To my understanding, that is the holding in Waters. Okay, then if we assume that the Sheriff is looking at these facts, tell me why, on his face, the facts that Mr. Flynn put forth should not have been sufficient disruption, if you believe that, to result in termination. Sure. Because on the balancing, assuming those are the facts, the disruption is minimal. It is employees claiming to be made uncomfortable by passing political conversations with Keith Duda. And in response, Keith Duda's interest is, if this version of events is believed, he's still talking about the campaign for the Sheriff of El Paso County. And that is clearly a matter of public concern. And his interest in speaking on that, particularly his interest in speaking on an equal footing with Sheriff Elder supporters, I think is substantial in comparison to employees claiming to be generally made uncomfortable by a conversation that even under Sheriff Elder's version of events has, I would say, a passing connection to the actual on-duty speech, if that makes sense. What do you do with this other conduct argument? Is that relevant at all in Prom 3, the notion of whether he would report to emergency calls? I forgot the exact way to frame this, but would react to calls? And other related non-speech conduct, is that relevant under Prom 3? No, not under Prom 3, Your Honor. The disruption must come from the speech itself. Where I believe those facts carry relevance is mainly on Prom 5. When Sheriff Elder presents his affirmative defense that he would have reached the same decision anyway. And we're not talking about Prom 5 here, right? No, we're not. So, as my time is almost up, I'll close with this, Your Honor. This is a qualified immunity interlocutory appeal. This court must accept that District Court's factual record is true and apply it to the law and make a determination whether the law is clearly established on that point. Here, the law is clearly established under Jansen and Wolfe. The District Court's record shows a violation of that law. Thank you very much, Your Honor. I appreciate the time. Thank you, Counselor. Case is submitted. Thank you, Counselor, for your argument.